293 N.J. Super. 580 (1995)
681 A.2d 1248
STATE OF NEW JERSEY, PLAINTIFF,
v.
LUCIO D. LIBERATORE, DEFENDANT.
Superior Court of New Jersey, Law Division Morris County.
Decided September 14, 1995.
Opinion Filed August 15, 1996.
*582 Phillip C. Wiskow, Esq., for defendant (Bongiovanni, Collins & Warden, attorneys).
Michael Jan, Esq., Assistant Morris County Prosecutor, for the State (John B. Dangler, Morris County Prosecutor).
BOZONELIS, J.S.C.
This matter was opened to the Court on defendant's de novo on the record appeal to the Law Division, R. 3:23-8(a), from the Town of Boonton Municipal Court. Defendant was charged with two disorderly persons offenses: obstruction of justice and resisting or eluding arrest. He was also charged with making an improper left turn, driving while under the influence of intoxicants (DWI), *583 and refusing a breath test. Defendant's motion to suppress based upon an unlawful arrest was denied in the Boonton Municipal Court. After a trial, defendant was acquitted of the obstruction of justice charge and convicted on all remaining charges. The improper left turn conviction was merged into the DWI conviction. Defendant now renews his motion to suppress and argues, in the alternative, that if the suppression motion is denied, there is insufficient credible evidence to support his convictions.

FINDINGS OF FACT
On December 16, 1994 at approximately 2:00 a.m., Patrolman Krok was parked on or about Williams and Main Streets in the Town of Boonton when he observed the defendant's vehicle. He suspected that the defendant, Lucio D. Liberatore, was going to make a prohibited left turn onto Union Street and, in fact, observed Mr. Liberatore making that left-hand turn. He then pursued Mr. Liberatore's vehicle onto Union Street and continued to follow the vehicle onto the approach of the intersection of Mechanic and Cedar Streets. Mr. Liberatore's vehicle then pulled into a parking space and stopped. Defendant exited the vehicle and walked toward the enclosed front porch of a dwelling later determined to be his residence.
At this point, defendant's version of events differs from that of Officer Krok. Mr. Liberatore states that he entered the front porch and that the officer followed him onto the porch and arrested him. If that was the case, the restrictions of Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), and State v. Bolte, 115 N.J. 579, 560 A.2d 644, certif. denied, 493 U.S. 936, 110 S.Ct. 330, 107 L.Ed.2d 320 (1989), discussed in full below, would apply. The search and seizure of Mr. Liberatore would not be sustainable under the Fourth Amendment and this matter would be dismissed.
However, a review of the entire transcript supports as credible the version of Officer Krok and the Court so finds. Officer Krok states that Mr. Liberatore stopped and exited his vehicle in the middle of the road, moving toward the house. He asked Mr. *584 Liberatore to stop. Mr. Liberatore did not stop and began to be verbally abusive to the officer. The officer approached Mr. Liberatore at or near the front porch where they continued their exchange. Mr. Liberatore continued his verbal abuse to the officer. Officer Krok again asked Mr. Liberatore to stop to inform him that he had committed a motor vehicle violation. During this time, Mr. Liberatore made a movement toward the storm door handle of the porch in an attempt to enter the residence. Patrolman Krok informed the defendant that he was going to be placed under arrest and indeed placed him under arrest and advised him of his Miranda rights. He then took Mr. Liberatore back to the patrol car, placed him on the hood of the car, frisked him, advised him again that he was under arrest, and told him not to move.
The defendant disputes the arrest in that the officer did not handcuff him. However, the lack of handcuffs is not significant because Mr. Liberatore offered no physical resistance to the officer even though he was verbally abusive to him. The defendant finally consented to return to the vehicle with the officer after he had been advised of his Miranda rights. The officer took precautionary measures. Handcuffs were unnecessary. Rather, the officer felt that would have exacerbated the situation since there was no physical resistance. Handcuffing might have caused physical resistance in terms of a reaction from Mr. Liberatore. In the alternative, therefore, the officer had positioned the defendant against the car.
What happened next was that Mr. Liberatore moved away from the patrol car and back into the enclosed front porch. At this point, another witness, the neighbor, a Mr. Cash, heard loud noises and banging as a result of Officer Krok advising Mr. Liberatore that he was already under arrest and that if he did not exit the porch, the officer would come in and remove him. In fact, he requested Mr. Liberatore to come out a number of times. The defendant remained uncooperative and Officer Krok entered the porch and physically removed him onto the sidewalk. He was *585 once again advised that he was under arrest, taken back to the patrol car and eventually taken down to the police station. At the station, defendant was charged with DWI and refusal to take a breathalyzer test.

THE MOTION TO SUPPRESS
There is no question that Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), stands for the proposition that the Fourth Amendment prohibits police from making a warrantless entry into a suspect's home to arrest for a minor traffic violation. And, indeed, the Welsh court indicated "that it is difficult to conceive of a warrantless home arrest that would not be unreasonable under the Fourth Amendment when the underlying offense is extremely minor." Id. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745. The only exceptions may be ones of hot pursuit and exigent circumstances and those exceptions concern felonies as in U.S. v. Santana, 427 U.S. 38, 42-43, 96 S.Ct. 2406, 2409-10, 49 L.Ed.2d 300, 305 (1976) rather than minor offenses.
Our Supreme Court in State v. Bolte, 115 N.J. 579, 560 A.2d 644 (1989) adopted and approved of this reasoning under facts involving minor offenses which included resisting arrest. Probable cause in those circumstances does not justify simply following suspects without a warrant into their homes. There are no exigent circumstances or hot pursuit in that regard. In Bolte, Id., at 597, 560 A.2d 644, there is also no question that the Court speaks in terms of probable cause to arrest when an officer is pursuing. And that is the context in which both Welsh and Bolte were decided and what they stand for: probable cause in terms of a warrantless entry. They do not address a situation as herein where a lawful arrest has already been accomplished by an officer and Miranda rights having been effected.
The defendant asserts that there is no distinction between these two scenarios. He argues in effect that the Bolte Court, in applying the current facts, would hold that a defendant is "under arrest" because of the fact that he was told to stop and he was *586 eluding the police or resisting arrest in that regard. This court is unwilling to make that leap from probable cause arguments to actions of officers after lawful arrest arguments. The two are distinct. One deals with probable cause for arrest based upon a stop. The other deals with a lawful arrest having physically been made.
In this context, the Court relies upon and cross-references State v. Bruzzese, 94 N.J. 210, 463 A.2d 320 (1983), certif. denied, 465 U.S. 1030, 104 S.Ct. 1295, 79 L.Ed.2d 695 (1984), in two regards. First, one must look to Bruzzese in terms of the following language by the Supreme Court:
"We hold that the proper inquiry for determining the constitutionality of a search-and-seizure is whether the conduct of the law enforcement officer who undertook the search was objectively reasonable, without regard to his or her underlying motives or intent." Id. at 219, 463 A.2d 320.
Overall, the Court views the reasonableness of the search, the purpose of the search, and the objective of the search. The rationale of search and seizure law begins and ends with those inquiries.
Second, in determining whether conduct is objectively reasonable, under the facts in this case, the Court then looks to the argument and all of the language of Bruzzese at pages 230 to 234, 463 A.2d 320. There our Supreme Court, in adopting the rule of Washington v. Chrisman, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), indicates that an officer has a right to monitor the movements of an arrested person following an arrest for two basic reasons. One is safety and the other is the integrity of the arrest.
[T]he Bruzzese Court also says:
"[O]nce a defendant is placed under lawful arrest, the arresting officer has the right to remain at his side and to follow him wherever he chooses to go." Id. at 232, 463 A.2d 320.
And further, the Court says:
"that every arrest regardless of the nature of the offense, must be presumed to present a risk of danger to an officer." Id. at 233, 463 A.2d 320.
And that is regardless of the offense, whether major or minor, a felony or a misdemeanor, in terms of when a lawful arrest is *587 effected, then the actions of the officer for safety and integrity of the arrest follow. To repeat:
"[E]very arrest, regardless of the nature of the offense, [is] presumed to present a risk of danger[.]" Ibid.

And in that regard, the Supreme Court says that they find that:
"[T]he Chrisman rule offers a sensible middle ground between handcuffing each arrestee or allowing all arrestees the freedom to flee from custody." Id. at 234, 463 A.2d 320.
It balances a reasonable expectation of privacy against unreasonable searches and seizures and one's privacy in a home with the need of an officer following an arrest to be concerned about the integrity of the arrest and the risk of danger. Under this reasoning, the Supreme Court distinguishes the case of State v. Seiss, 168 N.J. Super. 269, 402 A.2d 972 (App.Div. 1979) based on the fact that the purpose of that search, found to be unreasonable, was to conduct an exploratory search. Id. at 234, 463 A.2d 320. There the officer was entering the home with a purpose of exploration, whereas in Bruzzese and here, that was not the purpose.
Aside from the arguments of probable cause compared to those of lawful arrest, the critical inquiry as indicated in Bruzzese, supra, at 219, 463 A.2d 320 remains: was the search reasonable? Applied to the facts herein, the purpose for which Officer Krok went onto the porch to obtain Mr. Liberatore was not to conduct some widespread exploratory search. He had no such purpose. His only purpose was to bring him back by virtue of the lawful arrest that he had made for resisting arrest. He did not enter into the house. He only went into the porch doorway. In balancing the intrusion into the home against the objectives of the officer under Bruzzese, this Court finds that the search was indeed reasonable. The officer had the right to go into at least the porch doorway to effect the arrest that he had already made. It was objectively reasonable under all of the circumstances, without another purpose. He did not have the purpose of a DWI arrest, nor the purpose to find other items in the house. The defendant was in sight of the officer. It was a continuation of the overall *588 arrest sequence that had occurred under the circumstances. Accordingly, under the case law, applying the objectively reasonable standard to these facts, the officer had the right to do what he did. As such, the findings of fact clearly support the convictions for resisting arrest and an improper left turn. The motion to suppress is denied. See also, State v. Jones, 143 N.J. 4, 19-20, 667 A.2d 1043 (1995); United State v. Santana, 427 U.S. 38, 43, 96 S.Ct. 2406, 2410, 49 L.Ed.2d 300, 305 (1976).

THE SUFFICIENCY OF THE EVIDENCE
At Police Headquarters, defendant was charged with DWI and refusal to take the breathalyzer test. Officer Krok testified as to the physical observations of the defendant at that time. Those observations show that Mr. Liberatore had difficulty in his ability to stand or walk. He was swaying. His speech was of a rambling nature. He was argumentative. He was boisterous. He was talkative. He was threatening. Overall, his general attitude and demeanor was threatening. He had bloodshot eyes and the strong odor of an alcoholic beverage on his breath. In addition, after being properly advised of his rights with respect to the breathalyzer test, he initially remained silent when requested to take the same and thereafter flatly refused to do so. The observations of Officer Krok are credible and supported by this Court's independent review of the videotape of the proceedings at Police Headquarters, as well as by defendant's conduct in resisting arrest at his residence.
This evidence establishes that, as the arresting officer, Patrolman Krok had probable cause to believe defendant operated a motor vehicle while under the influence of alcohol. Defendant was arrested for DWI and refused to submit to a breathalyzer test. The elements of N.J.S.A. 39:4-50.2 are satisfied and defendant was properly convicted of such refusal. See State v. Wright, 107 N.J. 488, 490, 527 A.2d 379 (1987). When a defendant is informed of his rights regarding the breathalyzer test as herein, "anything substantially short of an unqualified, unequivocal assent *589 to the officer's request that the arrested motorist take the test constitutes a refusal to do so." State v. Sherwin, 236 N.J. Super. 510, 516, 566 A.2d 536 (App.Div. 1989) (quoting State v. Pandoli, 109 N.J. Super. 1, 4, 262 A.2d 41 (App.Div. 1970).
Independent of breathalyzer results, an alternative finding of intoxication may be based upon observational evidence to find a defendant guilty beyond a reasonable doubt of DWI. See State v. Slinger, 281 N.J.Super 538, 543, 658 A.2d 1299 (App.Div. 1995), citing State v. Sisti, 209 N.J.Super 148, 151, 506 A.2d 1307 (App.Div. 1986). The aforementioned observations by Officer Krok and this Court's review of the videotape show beyond a reasonable doubt that defendant was driving while intoxicated. Moreover, defendant's refusal to take a breathalyzer test is itself non-testimonial in nature and additional evidence to prove intoxication. See State v. Stever, 107 N.J. 543, 558, 527 A.2d 408 (1987), certif. den. 484 U.S. 954, 108 S.Ct. 348, 98 L.Ed.2d 373 (1987). The totality of the circumstances, including defendant's refusal to submit to a breath test, evidences a substantial deterioration or diminution of defendant's mental faculties or physical capabilities to prove intoxication, and supports his conviction of DWI. State v. Tamburro, 68 N.J. 414, 421, 346 A.2d 401 (1975).

SENTENCE
Based upon the convictions, the Court imposes the same sentence upon defendant as ordered in the Town of Boonton Municipal Court: for N.J.S.A. 39:4-50, driving while intoxicated, six (6) months loss of driver's license, $250 fine, $30 Court costs, $100 DWI Surcharge, $50 VCCB fine, $75 Safe Neighborhood Surcharge Fund, twelve (12) hours of attendance at the Intoxicated Driver Resource Center; for N.J.S.A. 39:4-50.4a, refusal to take a breathalyzer test, six months loss of driver's license, consecutive to the DWI sentence, $250 fine, $30 Court costs; for N.J.S.A. 2C:29-2(a), resisting arrest, $150 fine, $25 Court costs, $50 VCCB fine, $75 Safe Neighborhood Surcharge Fund, $2 ATS, and ten (10) days community service; for N.J.S.A. 39:4-124, improper left turn, *590 $80 of which $30 is suspended having merged into the DWI charge. The Court will enter the Judgment of Conviction. So Ordered.