STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v.
WAVERLY LARK, DEFENDANT–RESPONDENT.

Argued September 26, 1989—Decided December 14, 1989.

*Carol M. Henderson,* Deputy Attorney General, argued the cause for appellant (*Peter N. Perretti, Jr.,* Attorney General of New Jersey, attorney).

*Michael B. Jones,* Assistant Deputy Public Defender, argued the cause for respondent (*Alfred A. Slocum,* Public Defender of New Jersey, attorney, *Michael B. Jones* and *Marcia Blum,* Assistant Deputy Public Defenders, on the letter briefs).

The opinion of the Court was delivered by

STEIN, J.

In *State v. Howard,* 110 *N.J.* 113 (1988), we held that before accepting a guilty plea pursuant to a plea agreement, a trial court must inform a defendant of the parole consequences of a sentence to the Adult Diagnostic and Treatment Center (ADTC or Avenel). In this case, defendant pleaded guilty in December 1984 to two counts of first-degree aggravated sexual assault. He was sentenced on one count to ten years imprisonment with two years of parole ineligibility, and on the second count to a consecutive ten-year term at Avenel. Defendant did not appeal. In 1986 he sought post-conviction relief, which the court denied. On appeal from the denial of post-conviction relief, defendant for the first time contended that our decision in *Howard* should be applied retroactively to his plea proceeding, affording him the opportunity to withdraw his guilty plea. The Appellate Division agreed, concluding that our decision in *Howard* "does not represent a departure from existing law and is therefore not limited to prospective application." *State v. Lark,* 229

*N.J.Super.* 586, 591 (1989). We granted the State's petition for certification, 117 *N.J.* 51 (1989), and now reverse.

## I.

Defendant's plea and sentence resulted from charges against him in three separate indictments. One indictment charged defendant with burglary, attempted aggravated sexual assault, and aggravated criminal sexual contact; a second indictment charged defendant with aggravated sexual assault while armed, aggravated sexual assault during the course of a burglary, and several counts relating to defendant's possession and use of a knife in connection with the sexual assaults; a third indictment charged defendant with burglary and aggravated sexual assault.

After plea negotiations, defendant agreed to plead guilty to two counts of first-degree aggravated sexual assault. The remaining counts of the three indictments were to be dismissed. The State agreed to recommend concurrent sentences of an unspecified duration and a period of parole ineligibility not exceeding four years if defendant was sentenced to state prison rather than Avenel. The trial court accepted defendant's guilty plea. Defendant's Avenel evaluation, see *N.J.S.A.* 2C:47–1, concluded that his conduct was "characterized by a pattern of repetitive, compulsive behavior," *N.J.S.A.* 2C:47–3a, rendering defendant eligible for an Avenel sentence.

Prior to sentencing, the trial court apparently informed counsel that the original plea bargain was unacceptable, and that a sentence imposing a ten-year term in state prison with two years of parole ineligibility, and a consecutive ten-year term at Avenel would be acceptable. The court imposed that sentence in April 1985, after both defendant and his counsel confirmed defendant's willingness to modify the plea agreement to reflect the revised sentence. Defendant appealed neither his convictions nor his sentence.

In March 1986, defendant moved for post-conviction relief, asserting as grounds the ineffective assistance of counsel and the imposition of a sentence not in accordance with his plea agreement. On appeal from the denial of post-conviction relief, defendant asserted for the first time that the trial court's failure to have advised him of the parole implications of an Avenel sentence entitled him to revoke his guilty plea. The Appellate Division concluded that our decision in *Howard* was not a departure from existing law and therefore was applicable to defendant's sentencing proceeding. 229 *N.J.Super.* 586. The court remanded the matter to the trial court to consider whether the failure to have advised defendant of the parole consequences of an Avenel sentence prejudiced him. It observed that on remand "defendant must establish that from an objective standpoint there is a significant possibility that he would not have entered the plea had he been so informed." *Id.* at 592 (citation omitted). The Appellate Division held that our decision in *Howard* would be applicable "at least since the 1969 revision of the Rules of Court when *R.R.* 3:9–2 first required that defendants understand the consequences of their guilty plea," *ibid.,* and also concluded that the *Howard* issue could be raised initially during post-conviction-relief proceedings. *Id.* at 593.

## II.

■ The first question we consider is whether our holding in *State v. Howard, supra,* 110 *N.J.* 113, implicates our inherent power to limit the retroactive effect of our decisions, a power well-established and clearly recognized in past decisions of this Court. *See, e.g., Coons v. American Honda Motor Co., Inc.,* 96 *N.J.* 419 (1984); *State v. Gervasio,* 94 *N.J.* 23 (1983); *State v. Hunt,* 91 *N.J.* 338 (1982); *State v. Burstein,* 85 *N.J.* 394 (1981); *State v. Carpentieri,* 82 *N.J.* 546 (1980); *State v. Czachor,* 82 *N.J.* 392 (1980); *State v. Howery,* 80 *N.J.* 563 (1979); *State v. Sands,* 76 *N.J.* 127 (1978); *State v. Nash,* 64 *N.J.* 464 (1974); *Darrow v. Hanover Township,* 58 *N.J.* 410

(1971); *State v. Johnson*, 43 *N.J.* 572 (1965), aff'd, 384 *U.S.* 719, 86 *S.Ct.* 1772, 16 *L.Ed.*2d 882 (1966). To the extent that retroactivity issues arise in the context of criminal-procedure decisions implicating rights guaranteed under the federal constitution, United States Supreme Court precedents control the scope of retroactivity. *See State v. Stever*, 107 *N.J.* 543, 550–52 (1987) (acknowledging that under *Griffith v. Kentucky*, 479 *U.S.* 314, 107 *S.Ct.* 708, 93 *L.Ed.*2d 649 (1987), new constitutional rules of criminal procedure apply retroactively to cases pending on direct review, whether or not new rule constitutes "clear break" with the past). We acknowledge that our holding in *Howard* collaterally implicates certain federal constitutional rights waived by a guilty plea. The essence of our decision, however, concerns application of the requirement in *Rule* 3:9–2 that a guilty plea be made "with an understanding of the nature of the charge and the consequences of the plea." We concluded in *Howard* that for a sex offender subject to an Avenel sentence, *Rule* 3:9–2 requires the court to determine whether the defendant understands the unique effect an Avenel sentence may have on his parole eligibility. *Howard, supra,* 110 *N.J.* at 124–25. Thus, if the retroactive application of *Howard* is to be limited, state rather than federal standards determine the extent of the limitation.

The threshold issue is generally stated to be whether "a new rule of law has actually been announced." *State v. Burstein, supra,* 85 *N.J.* at 403. The Appellate Division in this case focused its attention on our decision in *State v. Kovack*, 91 *N.J.* 476 (1982), in which we held that under *Rule* 3:9–2, the trial court must inform a defendant pleading guilty of any period of parole ineligibility that the court may include in its sentence. *Id.* at 483–84. We concluded in *Kovack* that that requirement was not a new rule of law but was rather an application of long-standing principles to the parole-ineligibility terms first authorized when the Code of Criminal Justice took effect in September 1979. *Id.* at 486–87. The Appellate Division reasoned that in *Howard*, as in *Kovack*, our Court relied on the principle that defendants must understand the consequences of a guilty plea. Thus, the Appellate Division concluded that

*Howard* did not depart from existing law and was therefore fully retroactive. 229 *N.J.Super.* at 591.

It is evident that the desirability of limiting the retroactive effect of a particular decision cannot be determined simply by classifying the decision as "new" or "old" law. Justice Proctor, writing for this Court in *State v. Johnson, supra,* noted our reluctance to decide retroactivity questions on the basis of the common-law principle that law is perpetual and immutable:

> Perhaps, years ago, there was a philosophical compulsion to apply a new ruling retrospectively. The so-called Blackstonian conception of the nature of law and judicial decision-making was that law was perpetual and immutable. Judges were thought to be the discoverers rather than the creators of the law. Thus, a given decision was merely an evidence of the law; the most recent decision being the most authoritative evidence. An overruled holding was not bad law, it was simply never the law.

> Whatever the past status of the above philosophy, it has been recently characterized as a "splendid myth." [43 *N.J.* at 582 (citations omitted).]

Thus, we must recognize that although both *Kovack* and *Howard* are doctrinally consistent with prior law, both cases applied a settled legal principle for the first time to specific sentencing situations. In *Kovack,* the principle that a defendant pleading guilty must be aware of the penal consequences of his plea was first applied to a defendant informed of the maximum sentence that could be imposed but uninformed of his exposure to a parole-ineligibility period. Our holding in *Kovack* overruled an earlier Appellate Division decision, *State v. Conover,* 181 *N.J.Super.* 20, certif. denied, 89 *N.J.* 392 (1981), reaching a contrary result. In *Howard,* reversing the Appellate Division, 213 *N.J.Super.* 587 (1986), we first applied the same basic principle relied on in *Kovack* to a defendant subject to an Avenel sentence but uninformed of the unique parole aspects incidental to such a sentence. Because both decisions involve new applications of a settled principle, we look to other factors in determining the appropriateness of limiting the retroactivity of *Howard.*

We first take cognizance of a substantive difference between *Kovack* and *Howard* that distinguishes the interests served by retroactive application of these decisions. *Kovack* requires the sentencing court to make a defendant aware of a parole-ineligibility term that may be a component of the court's sentence, 91 *N.J.* at 488, the effect of which, if imposed, is a mandatory restriction on the defendant's parole eligibility. *Howard* requires the sentencing court to make a defendant aware of a statutory provision—not a component of the court's sentence—that may result in a defendant being eligible for parole either earlier or later than would have been the case had the defendant been sentenced to state prison. Because the court imposes the parole-ineligibility term, its impact on the defendant is both more certain and more direct than the potential parole restriction inherent in an Avenel sentence. Thus, the imperative for retroactive application is somewhat more compelling for *Kovack* than for *Howard*. Stated differently, there is an enhanced likelihood of actual prejudice to a defendant from noncompliance with the rule of *Kovack* than from noncompliance with *Howard*.

In concluding that *Kovack* was not a new rule of law and hence would apply retroactively, we also noted that the practical effect of that holding was to accord the decision retroactivity only to guilty pleas subsequent to September 1979, the effective date of the Code of Criminal Justice, which first authorized parole-ineligibility terms. Retroactive application of our decision in *Howard*, however, would not be comparably circumscribed. The unique parole-eligibility feature of an Avenel sentence is that a defendant is not eligible for parole until "after recommendation by a special classification review board" that the inmate "is capable of making an acceptable social adjustment in the community." *N.J.S.A.* 2C:47–5. That parole-eligibility requirement has been applicable to Avenel sentences since the adoption of the Sex Offender Act. *L.*1950, *c.* 207 (*N.J.S.A.* 2A:164–3 to –13) (repealed by *L.*1978, *c.* 95 (*N.J.S.A.* 2C:47–1 to –7)). Accordingly, the Appellate Division

concluded that our decision in *Howard* should apply retroactively at least to 1969, 229 *N.J.Super.* at 592, when the Rules of Court first imposed the specific requirement that defendants understand the consequences of their guilty pleas. *See* Pressler, *Current N.J. Court Rules*, Comment *R.* 3:9–2. The Attorney General asserts that unlimited retroactivity of *Howard* raises the specter of numerous post-conviction-relief applications by Avenel inmates seeking the benefit of our ruling in *Howard*.

Although our decision in *Howard* is doctrinally consistent with the principle that a defendant pleading guilty must be informed of the penal consequences of that plea, *Howard*'s application of that principle appears to have changed the long-standing and widespread practice of trial courts. In accepting guilty pleas from defendants potentially eligible for sentencing to Avenel, trial courts apparently omitted any explanation of the unique parole features of Avenel sentences from the pre-plea colloquy with defendants. *Howard*'s repudiation of this long-standing practice, dating back to adoption of the Sex Offender Act in 1950, is an added factor weighing in favor of limiting its retroactive effect. Prior to the Supreme Court's decision in *Griffith v. Kentucky, supra,* 479 *U.S.* 314, 107 *S.Ct.* 708, 93 *L.Ed.*2d 649, new constitutional rules of criminal procedure that constituted a "clear break with the past" were invariably held to be nonretroactive. *United States v. Johnson,* 457 *U.S.* 537, 549, 102 *S.Ct.* 2579, 2586, 73 *L.Ed.*2d 202, 213 (1982). One of the identifiable characteristics of decisions constituting a "clear break with the past" was that the decision "disrupts a practice long accepted and widely relied upon * * *." *Milton v. Wainwright,* 407 *U.S.* 371, 381–82 n. 2, 92 *S.Ct.* 2174, 2179–80 n. 2, 33 *L.Ed.*2d 1, 9 n. 2 (1972); *accord United States v. Johnson, supra,* 457 *U.S.* at 552–53, 102 *S.Ct.* at 2588–89, 73 *L.Ed.*2d at 215; *Gosa v. Mayden,* 413 *U.S.* 665, 672, 93 *S.Ct.* 2926, 2932, 37 *L.Ed.*2d 873, 883 (1973); *Stovall v. Denno,* 388 *U.S.* 293, 299–300, 87 *S.Ct.* 1967, 1971–1972, 18 *L.Ed.*2d 1199, 1205 (1967). In shaping our own retroactivity

jurisprudence, we have also been influenced by "the degree of reliance placed on the old rule by those who administered it * * *." *State v. Nash, supra,* 64 *N.J.* at 471.

The foregoing analysis leads us to conclude that although our decision in *Howard* involved an application of an accepted legal principle, namely, that defendants pleading guilty must be informed of the penal consequences of their plea, the specific application of that general principle to all defendants eligible for Avenel sentences is sufficiently novel and unanticipated to justify an assertion of our inherent power to limit its retroactivity. *Cf. Teague v. Lane,* — *U.S.* —, —, 109 *S.Ct.* 1060, 1069, 103 *L.Ed.*2d 334, 349, reh'g denied, — *U.S.* —, 109 *S.Ct.* 1771, 104 *L.Ed.*2d 206 (1989) ("[A] case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government * * * [or] if the result was not *dictated* by precedent existing at the time the defendant's conviction became final."). Accordingly, we must consider the extent to which *Howard* should be accorded retroactive application.

■ The options available to this Court in determining the retroactive application of its decisions were initially stated in *State v. Nash, supra,* 64 *N.J.* at 468–70, and more recently reaffirmed in *State v. Burstein, supra,* 85 *N.J.* 394:

[W]e note that this Court has four options open to it in any decision involving retroactivity: (1) make the new rule of law purely prospective, applying it only to cases whose operative facts arise after the new rule is announced; (2) apply the new rule to future cases and to the parties in the case announcing the new rule, while applying the old rule to all other pending and past litigation; (3) grant the new rule limited retroactivity, applying it to cases in (1) and (2) as well as to pending cases where the parties have not yet exhausted all avenues of direct review; and, finally, (4) give the new rule complete retroactive effect, applying it to all cases, even those where final judgments have been entered and all avenues of direct review exhausted. *State v. Nash,* 64 *N.J.* 464, 468–70 (1974). [*Id.* at 402–03.]

In the past, our choice among these four options was informed by weighing

(1) the purpose of the rule and whether it would be furthered by a retroactive application, (2) the degree of reliance placed on the old rule by those who

administered it, and (3) the effect a retroactive application would have on the administration of justice. [*State v. Nash, supra,* 64 *N.J.* at 471.]

Although these factors were derived from federal retroactivity jurisprudence, *see, e.g., Linkletter v. Walker,* 381 *U.S.* 618, 629, 85 *S.Ct.* 1731, 1737, 14 *L.Ed.*2d 601, 608 (1965), they have consistently influenced our own retroactivity decisions. *See State v. Catania,* 85 *N.J.* 418, 447 (1981); *State v. Burstein, supra,* 85 *N.J.* at 406; *State v. Carpentieri, supra,* 82 *N.J.* at 549; *State v. Howery, supra,* 80 *N.J.* at 569; *State v. Nash, supra,* 64 *N.J.* at 471.

Focusing on the first factor, we note that the purpose of the *Howard* rule is to assure, as required by *Rule* 3:9–2, that a defendant intending to enter a guilty plea and eligible for an Avenel sentence clearly understands "the nature of the charge and the consequences of the plea." As we observed in *Howard:*

In the future, trial courts should satisfy themselves that the defendant understands the possibility of the imposition of an Avenel sentence and the effect that such a sentence will have on the defendant's parole eligibility. In addition to stating the minimum and maximum terms of the offense, the court should advise the defendant of the standard for parole eligibility with an ADTC sentence. [110 *N.J.* at 125.]

We are not persuaded, however, that unlimited retroactive application of our holding in *Howard* would significantly further the interests to be served by that decision.

The second and third *Nash* factors are obviously interrelated in this case. The former practice, pursuant to which Avenel-eligible defendants were not routinely informed of the unique parole features of an Avenel sentence, was apparently relied on by trial courts and regarded as consistent with *Rule* 3:9–2. Innumerable defendants pled guilty and were sentenced to Avenel without the benefit of an explanation from the court of the parole features of an Avenel sentence. We assume that many of those defendants received that explanation from counsel.

In considering the effect of full retroactive application of *Howard* on the administration of justice, we also note the State's concern, expressed in its petition for certification, that

[it] will be faced with the possibility of prosecuting cases that are many years old. Such prosecutions will be difficult, if not impossible, in the older cases due to failing memories and the fact that the victims may be unable or unwilling to testify.

During oral argument the Deputy Attorney General informed the Court that there were 486 inmates confined at Avenel and 142 convicted defendants awaiting admission. She anticipated that unlimited retroactive application of *Howard* could result in several hundred petitions for post-conviction relief. Defendant's counsel estimated that a relatively small number of Avenel inmates would benefit from retroactive application of *Howard.*

Our evaluation of the *Nash* factors leads us to conclude that according our decision in *Howard* limited retroactivity best serves the interests of justice. Thus, we will apply *Howard*'s holding retroactively only to the defendant in that case and to cases pending when it was decided, in which the defendant "has not yet exhausted all avenues of direct review * * *." *See, e.g., Burstein, supra,* 85 *N.J.* at 403. That determination precludes this defendant and others similarly situated from using our ruling in *Howard* to obtain post-conviction relief. The prevailing practice in the trial courts prior to *Howard* and the potentially disruptive effect of full retroactivity on sex-offender convictions long since affirmed on direct appeal significantly influences our decision to limit the retroactive effect of *Howard.*

Our decision today is consistent with prior decisions of this Court according limited retroactivity to new rules of criminal procedure. *See, e.g., Czachor, supra,* 82 *N.J.* at 409–10; *Nash, supra,* 64 *N.J.* at 474. It is also consistent with the most recent decisions of the United States Supreme Court. *See Griffith v. Kentucky, supra,* 479 *U.S.* 314, 107 *S.Ct.* 708, 93 *L.Ed.*2d 649 (holding that new constitutional rules of criminal procedure

apply retroactively to all cases pending on direct review); *Teague, supra,* —— *U.S.* ——, 109 *S.Ct.* 1060, 103 *L.Ed.*2d 334 (holding that new rules of criminal procedure ordinarily would not be applied to criminal cases on collateral review). In *Teague,* the Court refused to decide whether the sixth amendment's fair-cross-section requirement applies to petit juries, rather than being limited to only the jury venire, as held in *Taylor v. Louisiana,* 419 *U.S.* 522, 95 *S.Ct.* 692, 42 *L.Ed.*2d 690 (1975). In declining to decide the sixth-amendment issue because its disposition would not apply to defendant, the plurality opinion referred to Justice Harlan's view that it is

"sounder, in adjudicating habeas petitions, generally to apply the law prevailing at the time a conviction became final than it is to seek to dispose of [habeas] cases on the basis of intervening changes in constitutional interpretation." [*Id.* at——, 109 *S.Ct.* at 1073, 103 *L.Ed.*2d at 353 (quoting *Mackey v. United States,* 401 *U.S.* 667, 689, 91 *S.Ct.* 1160, 1178, 28 *L.Ed.*2d 404, 418 (1971) (separate opinion of Harlan, J.)).]

The Court also referred to Justice Harlan's observation that

"the threat of habeas serves as a necessary incentive for trial and appellate judges throughout the land to conduct their proceedings in a manner consistent with established constitutional principles. In order to perform this deterrence function, the habeas court need only apply the constitutional standards that prevailed at the time the original proceedings took place." [*Id.* at——, 109 *S.Ct.* at 1073, 103 *L.Ed.*2d at 353 (quoting *Desist v. United States,* 394 *U.S.* 244, 262–63, 89 *S.Ct.* 1030, 1040–41, 22 *L.Ed.*2d 248, 263–64 (1969) (Harlan, J., dissenting)).]

Adopting Justice Harlan's view of retroactivity for cases on collateral review, the plurality opinion held, subject to two exceptions,[1] that "new constitutional rules of criminal procedure will not be applicable to those cases which have become

---

[1]The exceptions adopted by the plurality opinion are as follows:

(1) A new rule should be applied retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe." *Teague, supra,* at ——, 109 *S.Ct.* at 1075, 103 *L.Ed.*2d at 356 (quoting *Mackey* at 692, 91 *S.Ct.* at 1180, 28 *L.Ed.*2d at 420 (separate opinion of Harlan, J.)).

(2) A new rule should be applied retroactively if it requires observance of "those procedures that * * * are 'implicit in the concept of ordered liberty.'" *Ibid.* (quoting *Mackey* at 693, 28 *L.Ed.*2d at 421, 91 *S.Ct.* at 1180 (quoting *Palko v. Connecticut,* 302 *U.S.* 319, 325, 58 *S.Ct.* 149, 152, 82 *L.Ed.* 288, 292 (1937))).

final before the new rules are announced." *Teague, supra,* —— *U.S.* at ——, 109 *S.Ct.* at 1075, 103 *L.Ed.*2d at 356.

Although the analogy between federal habeas proceedings and our post-conviction-relief proceedings is imperfect, there is sufficient similarity to support our conclusion in this case that *Howard* does not apply to convictions in which appeals were finally adjudicated prior to that decision. In the context of this case, we are persuaded that the interest of finality, which is an essential element of our criminal justice system, outweighs any benefit that would be realized by application of *Howard* to convictions affirmed on appeal prior to its announcement.

Judgment reversed.

CLIFFORD, J., concurring in judgment.

The Appellate Division held that *State v. Howard,* 110 *N.J.* 113 (1988), "d[id] not represent a departure from existing law and [was] therefore not limited to prospective application." *State v. Lark,* 229 *N.J.Super.* 586, 591 (1989). The court below recognized that in *Howard,* as well as in *State v. Kovack,* 91 *N.J.* 476 (1982), this Court "relied upon this State's long-standing policy that a defendant must clearly understand the consequences of his plea." *Ibid.* (citing *Rule* 3:9–2).

The Appellate Division was correct in those conclusions. Where it went astray was in its determination that because the principle that a defendant must understand the consequences of entering a guilty plea "did not receive judicial expression as applied to an Avenel sentence until *Howard* [,] * * * it would not be reasonable to expect defendant to have raised the issue before now." 229 *N.J.Super.* at 592–93. Not only is that proposition incorrect, it renders the Appellate Division's disposition internally inconsistent.

The court below erred in its holding that defendant could not have been expected to have raised the issue on direct appeal because, as its opinion observes, the *Howard* decision merely applied well-settled law to the facts of that case. The opinion

below is internally inconsistent because if *Howard* did not break new ground—and it is obvious to all the members of this Court, see *ante* at 336, 337, to the Appellate Division, see 229 *N.J.Super.* at 591, and to defense counsel, as acknowledged at oral argument, that it did not—then it was available for argument on a direct appeal, which defendant never pursued. Having thus waived the question, defendant cannot raise it on post-conviction relief. *R.* 3:22-4.

As the Court accurately observes, *ante* at 336, the question of retroactivity never arises absent a new rule of law, which *Howard* surely did not presume to announce. At most *Howard* offered a sort of "bench manual" procedural guide for application of a hoary principle of law to a specific factual complex. We would be well advised to avoid any discussion of retroactivity in that circumstance.

In addressing the non-issue of retroactivity, the Court slices thin the already-complex principles of that difficult doctrine. In the process it wrings its hands, entirely unnecessarily, over the "effect of full retroactive application of *Howard* on the administration of justice," *ante* at 340. The majority opinion raises the spectre of "several hundred petitions for post-conviction relief" were we to give *Howard* unlimited retroactive application. *Ante* at 341. Not to worry. If filed, those petitions would all be denied, for the same reason that Lark's petition should be denied: because the *Howard* issue was not raised on direct appeal, it is forever foreclosed.

I join only in the judgment of reversal.

HANDLER, J., joins in this opinion.

CLIFFORD, J., concurring in judgment.

*For reversal*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.